IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| REBECCA BOWDEN<br>*Plaintiff* | § § § § | |
| v. | § | CASE No.1:14-cv-00287-MAC |
| | § § | |
| JEFFERSON COUNTY, and<br>NICK SALEME,<br>*Defendants* | § § § | TRIAL BY JURY DEMAND |

**REBECCA BOWDEN'S THIRD AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Rebecca Bowden ("Plaintiff" or "Bowden") complaining of Jefferson County ("County"), and Nick Saleme ("Nick"); and for cause, Plaintiff would show the following:

PARTIES

1. Plaintiff is a resident of Jefferson County, Texas.

2. County has filed answer.

3. Nick has filed answer.

JURISDICTION AND VENUE

This court has jurisdiction of all matters in this legal controversy pursuant to Title 28 U.S.C.A., §§ 1331, 1367. Bowden also seeks a declaratory judgement under the Uniform Declaratory Judgment Act, Title 28 U.S.C.A., §2201, and FRCP 57, and a Permanent Injunction requiring Defendants to reinstate Plaintiff as a

Deputy Constable, Precinct 1, Jefferson County, Texas to be issued after a full evidentiary hearing, before a jury.

Venue is appropriate in the Eastern District of Texas, Beaumont Division.

## SPECIAL STATUTES

4. This action is brought pursuant to Title 42 U.S.C.A., § 1983.

## FACTS

5. Plaintiff has served faithfully as a Deputy Constable of Precinct 1, Jefferson County, Texas. She has served most recently under Constable Charles Wiggins, until and through January 1, 2013.

6. Jefferson County contracts with the Jefferson County Deputy Constables Association for four year periods, the current period of the Contract being from October 1, 2014 through September 30, 2018.

7. At all times material hereto, Jefferson County was operating under a contract with the Jefferson County Deputy Constables Association for the period October 1, 2010 through September 30, 2014, which contract covered or applied to Bowden.

8. At all times material hereto, Bowden was a third party beneficiary of the contract between Jefferson County and the Jefferson County Deputy Constables Association, for the period October 1, 2010 through September 30, 2014 ("Contract").

9. The Contract created a protected property interest for Bowden, whereby she had certain rights and benefits, one of which was tht she would not be terminated by either a Constable in office when the Contract was executed by the County, or a Constable who became invested withthe powers of that office after the Contract had been executed and while it was in force and effect, so long as the new and incoming Constable did not give a time-limited notice of renegotiation and actually renegotiate with the Jefferson County and the Jefferson County Deputy Constables Association (without legal challenge by Bowden) and through the renegotiation alter the relevant terms and conditions of the Contract so as to deny Bowden the job protections which she enjoyed under the Contract.

10. The terms and conditions of the 2010-2014 contract were never challenged or renegotiated by either Constable Charlie Wiggins or his successor, Nick according to the terms of the Contract .

11. Carey Erickson, the Director of the County's "Human Resources" Department verified to Nick that the terms and or substance of justcause for adverse personnel actions as set forth in the Contract were in force and effect when Nick told Erickson, in advance of Nick's being sworn in and or qualified to take office as Constable Precinct 1, When I am sworn

in, I am going to have to let Charlie's crew go..." When Nick became an invested elected official, he was the County's policymaker in personnel actions in his department except those which involved the creationof a new position and budgeted support for that position.

12. Bowden also had a protected liberty interest in being free from arbitrary and capricious personnel decisions such as the forced termination in this case.

13. Until early 2012, Wiggins was a member and candidate of the Democratic Party, and he was slated to stand for re-election as a Democrat for the position of Constable Precinct 1, in November 2012.

14. Wiggins was reported to be opposed by Nick, a Stassenesque or regular candidate for public office.

15. Nick has stood for election in recent years for each of the political races in which he has been a candidate as a member of the Republican Party.

16. Nick wanted to win the office of Constable Precinct 1 more than anything because he had been fired from that office years ago, and carried a burning desire to have the power which had deprived him of official status.

17. In January 2012, Nick paid his filing fee to run as a Republican candidate against Wiggins, and attended the Jefferson County Republican Party's

Christmas and 2012 Election kick-off party on December 19, 2011.

18. When Nick arrived at the Republican Party's Christmas and 2012 Election kick-off party, he saw Wiggins, Bowden and the other employees of the Constable's Office, Precinct 1. Nick learned that Wiggins had flipped from the Democratic Party to the Republican Party and that the Republican Party had welcomed his membership and candidacy and was supporting his candidacy in the upcoming primary.

19. Nick was observed taking note of Bowden's and the other deputies who were in attendance at the party as well.

20. Nick immediately demanded that his filing fee be returned to him by the Republican Party and joined the Democratic Party if he could become its candidate for Constable Precinct 1.

21. Nick, feeling spurned by the Republican Party reportedly told leaders of the African American community that he would fire Wiggin's deputies and would hire a former African American candidate for the position of Sheriff if the Black leadership would support his candidacy and overlook his past Republican Party membership.

22. The primary season soon became the season of the general election and on November 6, 2012, the Democratic landslide led by President Obama swept Nick into office as the Constable elect for Precinct 1.

23. Jefferson County is a dynamic political environment, and although its elected officials are told by the County's Human Resources Department, led by Carey Erickson, that they should not enact job security policies for the employees of their respective offices, many (reportedly except for the Sheriff) have rejected Erickson's advice and decided that fundamental fairplay and constitutional protections should attend public employment. The Constables andteh County have even gone so far as to enter into agreements with their Deputies such as the Contract in this case.

24. On November 13, 2012, at approximately 3:30 pm, in the courthouse offices of Precinct 1, Constable Wiggins walked into the middle of the office and took his cell phone from his ear and put it on speakerphone. Constable Wiggins was having a conversation with Nick Saleme, and asked Nick what his plans were regarding the people already working in the Precinct 1 office, after Nick took office. The deputy constables heard Saleme stumble in response and said he had been talking with advisors, lawyers, having meetings, and then said, "The people in your office have been there for a long time and I feel that they are politically loyal to you (Wiggins), and to Thurman...I don't want to have to be worried about being stabbed in the back or have anyone going to others telling them what I am doing and trying to make me look bad...So, they will be let

go." Constable Wiggins asked Nick for clarification…did he "…mean the clerks as well?"…, and Nick stated that meant "…the clerks too." Nick then said that Volena Chapman would be coming to work for him as his chief clerk.  Before getting off of the phone with Nick, Constable Wiggins made the statement, "I really don't know why you would think that the staff and deputies would be anything but professional." Nick once again stated, "I just don't think it would work out with any of the current staff who are there."

25. On November 20, 2012, Wiggins issued a memo to all staff which protested Nick's threatened termination of the staff and deputies in the Constable's office. Wiggins put in writing what he had represented over the years to each of Precinct 1 employees about the terms and conditions of their respective employments in the Constable's Precinct 1 office, to the effect that the personnel policies of the office were not at-will, had not historically been at will but were based on merit and good-cause-based termination and discipline, and they could not be terminated because of their political affiliation to the Republican Party.

26. Bowden, as a single parent and woman, was required to make a decision by December 17, 2012 as to whether she would have an income after the first of the year, and although she didn't want to retire, the retirement was

the only source of income which she had available to her.

27. Bowden contacted Erickson in the County's HR department seeking advice, and Erickson told her that he could not get in contact with Nick and didn't know what the exact situation about Nick's plans would be, but while Erickson was equivocal, he did seem to agree that Nick could do whatever he wanted to do and that the existing policies regarding personnel and termination being based on "good cause" or non-patronage cause was not binding on Nick or the County…if Nick challenged the agreement. Nick did not challenge the Contract's terms and seek a renegotiation of its limits on his rights of Office and authority in personnel matters. Erickson refused to comment about the conflict in his statement and the language of the Contract.

28. On December 17, 2012, Erickson communicated to Wiggins that the Bowden, all deputies and clerks would be terminated by Nick on December 31, 2012.

29. No good cause existed for Nick's termination of Bowden or any of the people who were employed in the Precinct 1 Constable's Office.

30. The County has through its Human Resources department attempted to mislead and deprive Plaintiff of Constitutionally protected property and liberty interests, and Contract rights by assisting or facilitating Nick in his

31. The County's motivation was to embarrass Saleme and reinstitute and implement an autocratic personnel system, and to deprive County employees, specifically Deputy Constables whose employment is Constitutionally protected by due course/process of law or just cause requirements from having that protection.

32. Nick's motivation in terminating Plaintiff and her fellow workers in Precinct 1 was substantially motivated by Bowden's exercise of protected symbolic speech and or association in attending the Republican Christmas /kick-off political party of December 19, 2011, or working for the former Democratic then Republican candidate Charles Wiggins as Constable of Precinct 1against Nick.

33. The Defendants' actions have a chilling effect on employees of the County and force County employees under threat of termination to refuse to affiliate with the Republican Party or a political party disfavored by the County's Human Resources Department and/or the County.

## CAUSE OF ACTION

39. Bowden possessed a property interest to her continued employment absent good or just cause for termination.

40. Bowden possessed a liberty interest to being freeefrom adverse

personnel action for arbitrary and capricious reasons.

41. Bowden has a fundamental right to attend and participate in political functions without regulation by Nick or the County.

42. Bowden has a fundamental right to associate with whomever she chooses.

43. Nick's termination of Bowden is subject to strict scrutiny.

44. Bowden is entitled ot due process, both procedural and substantive, before she could be terminated by Defendants(s).

45. Bowden was denied protected interests without the protection of the "law of the land"or due process, and if she had been afforded due process she would not have been terminated.

46. Bowden was terminated in retaliation for her exercise of protected speech, and or for arbutrary and capricious reasons.

47. Bowden did not voluntarily resignor invoke retirement benefits but did so only to preserve her career and professional certifications.

48. Bowden was constructively discharged or terminated in fact.

49. Bowden seeks declaratory and injunctive relief whereby the court would declare that she had been terminated in violation of and without the protectgion of the United States Constitution, and the Texas Constitution.

50.  Specifically, Bowden seeks a declaratory judgment that Defendants have violated her Constitutional Rights secured by the United States Constitution(First and Fourteenth Amendments),and the Texas Constitution (Article One, Sections 3, 8, and 19), and an injunction orddering Defendants to reinstate her to her former position with all attendant benefits and emoluments to which she is entitled.

## PRAYER

Wherefore, Plaintiff prays for damages and interest thereon for damages caused by the Defendants' violation of her rights, for reasonable and necessary attorney's fees, and costs, for a declaratory judgment and mandatory injunction.

Respectfully submitted,
Watts & Company Lawyers Ltd
/s/ Larry Watts
Larry Watts SBN 20981000
Melissa Azadeh SBN 24064851
P.O. Box 2214
Missouri City, Texas 77459
Phone: (281) 431-1500
Fax: (877) 797-4055
Wattstrial@gmail.com

## CERTIFICATE OF SERVICE

I, Larry Watts, certify that a true and correct copy of this document has been served by e-service, if available, or by filing with the Clerks CM/ECF system as an exhibit to a Motion for Leave to File, on this the 24th day of October, 2014.

/s/ Larry Watts
Larry Watts